# PARSONS *v.* LITTLE.

EQUITY PRACTICE; INTERVENTION; APPEALS; APPEAL BONDS; JUDICIAL SALES; TRUSTS AND TRUSTEES; CORPORATIONS; BONDHOLDERS.

1. The holder of the bonds of a corporation, secured by a deed of trust, has the right, in order to protect his interest, to intervene in a proceeding in equity for the foreclosure of the deed of trust.

2. Where a petition to intervene in equity is treated as having been properly filed, although formal leave to file was not granted, and it is dismissed on its merits, an appeal by the petitioner will lie.

3. An appeal bond which, after its execution, but before its approval, is, by permission of the lower court, changed by erasure from a supersedeas bond to a bond for costs only, by the appellant's attorney, with the consent of the surety, is a sufficient appeal bond.

4. *Quære*, whether a sale under a decree directing the trustees named in a deed of trust to sell the trust property is to be considered a sale under the trust deed, or a judicial sale under the decree.

5. A sale made under a decree directing the trustees under a deed of trust securing the bonds of a corporation, to sell the trust property, will not be set aside on the ground that the decree changed the time for advertising the sale from that fixed by the trust deed, where the decree was passed upon the application of the grantor in the deed of trust and the trustee, who represented the holders of the bonds, and no one objected until after the sale had been confirmed.

6. Whether a judicial sale shall be confirmed is a matter within the sound discretion of the court ordering it, and the presumption is in favor of an order of confirmation.

7. A decree confirming a sale of the property of an insolvent corporation for default in the payment of bonds secured by a deed of trust will not be reversed upon the allegations, in an unverified petition of a dissatisfied bondholder, of a belief that there was an agreement between the purchaser and other bondholders that the purchase should inure to their joint benefit, and that the sale was made for a totally inadequate price, supported only by affidavits, filed a year before in another proceeding, to the effect that the property was then worth much more than was realized at the sale.

8. The court may well deny the right to intervene upon an unverified petition.

9. A trustee under a deed of trust to secure the bonds of a corporation is the legal representative of the bondholders, and is answerable to them for misconduct in the matter of the foreclosure of the trust.

No. 1661.   Submitted October 10, 1906.   Decided November 7, 1906.

HEARING on an appeal by an intervening petitioner from a decree of the Supreme Court of the District of Columbia, dismissing his petition.                              *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a decree dismissing a petition for intervention in a cause in equity depending in the supreme

court of the District of Columbia. The original bill in that cause was filed January 2, 1906, by Norton M. Little against the Washington Steel Cut Cereal Company and the International Trust Company, of Maryland. Therein it was alleged that the Cereal Company is a corporation organized under the laws of the State of Delaware, and having its only office in the District of Columbia, where it is engaged in the manufacture of cereals and cereal foods. Defendant trust company is a corporation of Maryland, with its principal office in the city of Baltimore, and is sued as trustee. That the cereal company was organized in the year 1902, with a capital stock of $200,000, divided into shares of the par value of $10 each, of which there has been issued about $145,000. That on the 1st day of July, 1902, the cereal company issued bonds to the amount of $50,000, bearing interest at 5 per cent per annum, securing the same by deed of trust upon all the property of said corporation, in which instrument the said trust company is named as trustee. That about $29,000 par value of said bonds have been sold and are outstanding, bearing interest. That complainant is the holder and owner of 365 shares of the capital stock of the cereal company, and owner of $2,100 par value of bonds, and is a creditor of said company to the amount of $74.99, for which he has no security. That defendant cereal company is insolvent, some of its promissory notes have matured, and it has been obliged to borrow large sums of money from time to time in the conduct of its business. That it has available but a few hundred dollars in cash, and some unfinished stock in the mills, and its real estate; but that the interest on its bonds outstanding, amounting to about $750, was due January 1, 1906, and it is without funds to pay the same. That it is threatened with suits at law and with attachment against its property and is liable to have all its available assets seized and wasted, if it does not prevent one creditor from obtaining advantage over others. That the real estate of the defendant consists of its plant and land, machinery and a building, which is fully described, and is entirely insufficient to pay the amount of its bonded indebtedness, which, including the amount of the bonds issued as aforesaid, will amount to about $40,000. That the bonds of said company not

sold have been hypothecated for money borrowed, and the defendant company is threatened with a sale of same at auction to pay said security. That if said sale be had, defendant cannot conduct its business, and there will be competition among its creditors to seize its assets, unless a receiver is appointed to take charge of and preserve the same for the benefit of all creditors. The prayer was for the appointment of a receiver to preserve the property, and for general relief. On the same day the defendant cereal company entered its appearance and filed an answer to the bill, admitting the allegations of the same in general. It also admitted that it was unable to meet its obligations and provide material for manufacture, and is therefore advised that it is proper that it consent to the appointment of a receiver to take charge of its assets, that the same may be safely preserved and paid to those lawfully entitled thereto. The same day the court entered an order appointing Wharton E. Lester and Douglass S. Mackall receivers of the property of the defendant cereal company, requiring them to enter into a bond in the sum of $10,-000 for the faithful discharge of their duties. On January 4 the receivers made a report to the court in which appears a schedule of the value of the real estate, personal property, and choses in action of the defendant company, which they appraised at the sum of $6,751.72. The liabilities of the company were stated to be: Capital stock issued, $155,580; bonds issued, $29,200; accrued interest on same, $750; promissory notes for which the remaining bonds of the company are held as collateral security, $4,127.58; taxes due District of Columbia, $41.89, and to the State of Delaware, $100; unsecured debts, $1,-766.05,—making a total liability, aside from the capital stock, of $35,235.52. They further reported that the said company had many customers, and had built up a considerable .trade, wherefore the receivers deemed it best that the plant be sold as soon as possible, in order that the trade and custom of the company may not be entirely lost to any possible purchaser. They further represented that the plant can probably be sold free from said trust, only with the consent of the International Trust Company, but that, as, under the terms of the deed of trust, the trust company can only take possession sixty days after default

in payment of interest on the said bonds, and as the trust can be administered for the benefit of the stockholders more economically in this court than by said company, it would be to the advantage of all parties that the entire matter should be settled in this court. They further represented that, in estimating the value of the plant, they had taken into consideration the fact that practically the same plant was once sold at auction by order of this court for the sum of $5,000. On January 8 the International Trust Company filed an answer that the interests of the cereal company and its stockholders, bondholders, and creditors will be best subserved by an immediate foreclosure and sale, under the terms of said deed of trust, by virtue of a decree passed by the court. On the same day the said trust company filed a petition alleging the default of the cereal company in payment of its taxes and interest upon bonds. It also alleged that on the 6th day of January, 1906, at a meeting of the board of directors of the cereal company, a resolution was passed requesting the petitioner to apply for an order of foreclosure and sale of the assets of said cereal company, and that your petitioner is satisfied, unless immediate action is taken to dispose of the assets of the cereal company, great loss will be entailed upon all of the creditors thereof, by reason of the fact that the trade which has been built up by said company will be utterly lost if any delay ensues in disposing of its assets; and that it is not practicable for the receivers to attempt to carry on the business aforesaid, because of their inability to raise the necessary funds for the purpose; that, under the terms of the trust deed, your petitioner is authorized to enforce and foreclose the trust, and for that reason to apply to this court for a decree of foreclosure and sale of the same. The prayer of the bill was that all parties interested be cited to show cause why the prayer of this petition should not be granted, and that a decree of foreclosure and sale of all the property enumerated in the report of the receivers, be passed.

The trust, made an exhibit to the petition, is in the usual form to secure the issue of bonds for the sum of $50,000, and providing for the retention of possession by the mortgagor until after default. In case of default in the payment of any instalment

of interest, continuing for sixty days, the trustee shall, upon the request of one fourth of the holders of the bonds, and the furnishing of indemnity by these, take possession of the property, or may apply to a court of competent jurisdiction for the appointment of a receiver to take possession of the same.

Exclusive right of action for the protection of the bondholders is vested in the trustee. The trustee is authorized to sell the property in case of default at public sale, after advertising the same for eight successive weeks in a daily publication in Washington and in Baltimore. The action of the trustee is made subject to the power of the majority of the holders of bonds in respect of enforcement of the trust. It was made to appear also that on January 8, 1906, the cereal company, by resolution of its directors, waived the provisions of the trust providing for the lapse of sixty days after default, before action to foreclose, and requested an immediate application to the court for a decree of foreclosure and sale after such advertisement as the court might direct. On the same day an order was passed by the court empowering the trust company to foreclose the trust and sell the property after advertisement of ten days, and to make title to the purchasers. On January 17, 1906, a majority of the bondholders, representing $32,500 in amount, requested the trust company to declare the principal of the bonds to be due, as authorized in the trust deed, which was accordingly done. On January 26, 1906, the trust company reported the sale of the land, plant, and personal property named in the trust deed, in accordance with the order of the court, for the gross sum of $5,757. The report of sale concluded with a prayer for an order confirming the sale and directing the trust company and the receivers to unite in a conveyance to the purchaser, one Norman M. Little. On the same day the court passed the said order, and referred the case to the auditor to state the accounts of the trustee, etc.

On February 5, 1906, Mary A. Parsons, the appellant, filed a petition of intervention in said cause, in which she alleged that she is the owner of $6,600 of the bonds of the said cereal company. That the sale reported by said trustee is for a totally inadequate price, it appearing from statements attached that

the said property is worth a far greater sum, namely, from $28,000 to $38,000. That, through her attorney, the petitioner made an effort to have the bondholders get together for their mutual protection, and appointed a meeting of the same, but only four bondholders attended the same. That your petitioner believes that between Norman M. Little, the purchaser of the property for the inadequate price of $4,900, and the bondholders signing the request of the trust company of Maryland to declare the bonds due, there is an agreement that his purchase shall inure to their benefit and to the injury of petitioner and the owners of $11,400 worth of bonds, who, as well as the petitioner, failed to sign said request. That the cereal company and the trust company have voluntarily entered their appearance in this court, and have waived the thirty days allowed them by the rule of court so to do, as well as the thirty additional days in which to answer; and that the confirmation of the sale at this term of the court at which the decree was signed, without an order nisi, is improvident and contrary to the practice recognized in equity in confirmation of sales. Petitioner prayed that the decree affirming the said sale be vacated, and that if any confirmation of the sale be entered at this term, it be nisi, and that the minority bondholders be given an opportunity to be heard before final confirmation. This petition was not sworn to. It was accompanied, however, by what purported to be copies of two affidavits, the one made by Allen W. Mallery on February 2, 1905, and the other by Thomas Gordon on the 2d day of February, 1905, in a former proceeding against the cereal company for the appointment of receivers. The affidavit of the said Mallery represented the property and assets of said company as worth at that time about the sum of $25,675; and that of said Gordon estimated the same at the value of about $38,000.

On the same day the petition was heard, and dismissed, with costs. From that decree this appeal has been taken.

*Mr. S. Herbert Giesy,* for the appellant:

1. This is not a sale under the deed of trust, for it was not in accordance with its terms. The sale was made, if at all, by

virtue of the decree of January 8, 1906, authorizing and empowering the appellee, the International Trust Company, of Maryland to foreclose. If the sale was made by virtue of this decree, there was no power in the court to ratify and confirm this sale except nisi, in accordance with the practice and custom of equity. Alex. Md. Chancery Practice, 146; *Anderson* v. *Foulke,* 2 Harr. & G. 357.

2. The consent of all parties was not before the court, for the trust company did not pretend to have been requested to declare the principal of the bonds due by more than $32,500 in amount. In fact, they were only lawfully requested by $11,000 worth of bonds to make such declaration. This was not sufficient. *Farmers' Loan & T. Co.* v. *New York & N. R. Co.* 44 N. E. 1051.

3. The *cestui que trust* of the appellee, the International Trust Company, of Maryland, the petitioner, Mary A. Parsons, having been injured by the sale, adopted the proper course to secure her redress by filing her petition asking for a vacation of the order ratifying and confirming the sale, and praying for an opportunity to show that the price was inadequate and the sale was for the benefit of a portion of the bondholders. *Edwards* v. *Maupin,* 18 D. C. 39; *Kenaday* v. *Edwards,* 134 U. S. 124; *Anderson* v. *Foulke,* 2 Harr. & G. 357.

4. If this court should by its mandate direct the vacation of the order ratifying and confirming the sale, it would be competent to show not only that the price was inadequate and the sale for the benefit of a portion of the bondholders, but also that the appellee, the International Trust Company, of Maryland, was not a necessary or proper party to the bill of Norton M. Little simply praying for the appointment of a receiver. *Clark* v. *Bradley Co.* 6 App. D. C. 442; Beach, Receivers, sec. 131; *Baker* v. *The Adm. of Backus,* 32 Ill. 96; *Kneeland* v. *American Loan Co.* 136 U. S. 100; *Clyde* v. *R. & D. R. Co.* 56 Fed., 541.

5. This was not a suit in foreclosure and could not be made so by the voluntary intervention of the appellee trust company. The decree authorizing and empowering the said trust company to foreclose under the deed of trust, and then changing the terms

of the deed of trust, was improvidently allowed, and such a decree could only be passed in a case in foreclosure in which the appellee trust company was a party complainant. *Kneeland* v. *American Loan Co.* 136 U. S. 100; *C., S. & C. R. R. Co.* v. *Sloan,* 31 Ohio St. 8; *People ex rel. Port Huron & Gratiol R. Co.* v. *Judge of St. Clair Circuit,* 31 Mich. 457; Jones, Corporate Bonds & Mortgages, sec. 428.

*Mr. Wharton E. Lester* for the appellee, the Washington Steel Cut Cereal Company.

*Mr. D. S. Mackall* for the appellee Little.

*Mr. Walter C. Clephane* for the appellee, the International Trust Company, of Maryland.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

The motion to dismiss the appeal, that was set down to be heard with the cause on its merits, alleges the following: First, that the appellant is not a party to the cause, and cannot appeal from a decree entered therein; second, that the same is not a final decree; third, that appellant did not give the bond required on appeal. The motion to dismiss, we think, must be denied. The appellant, as holder of bonds secured by the deed of trust, had a right to intervene in the proceedings for the protection of her interests, if necessary. Leave to file her petition for intervention was not denied. It was treated as having been properly filed, and was dismissed on its merits. The decree of dismissal was a final one as to her, and she was, therefore, entitled to appeal from it.

The bond was the printed form of a supersedeas bond, conditioned for the payment of damages, as well as costs, and bore the signature of appellant, as principal, and the United States Fidelity Company, as surety. Appellant's counsel explained to the trial justice that the bond had been intended to secure the costs only, and with his permission, and the consent of the

surety, who was present, the word "damages" was erased before approval. Whether the signature of the appellant was necessary to this appeal bond need not be considered. Her attorney represented her, and it must be presumed that he was authorized to make a change which rendered it less onerous, and the surety, consenting thereto, was bound by it. The costs of the motion will be taxed against the appellees.

Passing to the case on its merits, we are of the opinion that no error has been shown in the decree dismissing the petition for intervention.

Whether the sale ought to be considered as made by the trustee under the power conferred in the trust deed, or as a judicial sale under the order of the court, is immaterial, though the latter view is probably the correct one, as the trustee subjected itself to the power of the court in the matter of foreclosure. Nor need we pause to inquire whether the court had the power to change the time for advertisement of the sale that was stipulated in the trust deed. The order was made upon the application, and with the consent of the mortgagor, as well as of the trustee, which was the representative of the holders of the secured bonds. Moreover, a large majority of the holders of the outstanding bonds also gave their approval. Whether the sale as made and reported ought to have been confirmed was a matter within the sound discretion of the court. No one having an interest appeared in opposition to the order of sale or the decree of confirmation,—not even the appellant, who was apparently aware of the entire proceeding.

Although there is a great discrepancy between the amount realized by the sale, and the indebtedness and alleged capital stock of the insolvent corporation, the court was in possession of all the facts relating to the value of the property, and the presumption is in favor of the soundness and justness of its conclusion. There is no fact before us that would justify the inference that there was an abuse of discretion.

The petition for intervention was not even sworn to, and it alleges no fact tending to show irregularity or act of impropriety in the act of sale. Its single allegation, that the sale was made for "a totally inadequate price," is a conclusion accompanied by

no facts showing a foundation therefor. No affidavits were filed in its support. It is true that reference is made to exhibits which consist of copies of two affidavits of the value of the property of the cereal company, that were made February 2, 1905, in some judicial proceeding at that time relating to the appointment of receivers for that company. What those proceedings were, or what was their result, does not appear. Those affidavits, made more than a year before the petition of intervention was filed, might have truly represented the then value of the property, without furnishing the measure of value at this time. And it is singular, indeed, that if the sale in January, 1906, was for a totally inadequate consideration, no witness was found to make affidavit to the fact. The general allegation, in the unverified petition, of the belief of the petitioner that there is an agreement between the purchaser, Little, and other bondholders, that this purchase shall enure to their joint benefit, is of no consequence, since there is no allegation of a combination or understanding by them to stifle bidding at the sale, or in any manner prevent the property from selling at a fair price.

The court might well have denied the right to intervene upon a petition that was not even supported by the petitioner's oath.

A decree confirming a sale cannot be reversed upon such a showing as the appellant has made.

The trust company was her legal representative in all matters relating to the foreclosure, and if she has sustained damages through any misconduct on its part she will probably have some remedy against it.

The decree will be affirmed with costs.          *Affirmed.*